UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDE ZAIN McCOLLUM,

        Plaintiff,

v.                                                                                         Case No. 1:08-CV-96

RODNEY BAHL, et al.,                                                  HON. GORDON J. QUIST

        Defendants.

_____/

## **MEMORANDUM OPINION AND ORDER**

On December 10, 2008, the Court heard oral argument on several motions, including motions to dismiss filed by various Defendants. The Court ruled on some issues during the hearing and took others under advisement. The rulings made during the hearing were memorialized in an Order entered the same day. The rulings on the remaining issue are set forth below.

The Court finds it unnecessary to give a detailed factual recitation. Plaintiff has sued various individuals and governmental entities on claims arising out of his wrongful arrest, conviction, and incarceration for the 2005 murder and sexual assault of a Lansing Community College ("LCC") professor in the Student Personnel Services Building on the LCC Campus. The crux of Plaintiff's allegations is that the investigating officers fabricated Plaintiff's confession by furnishing him details of the crime, in spite of obvious indications that Plaintiff suffered from cognitive deficiencies, and the investigating officers and prosecutors failed to disclose exculpatory evidence in both videotape and written form establishing that Plaintiff was elsewhere during the sexual assault and murder. Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985(3) for violation of his federal civil rights as well as various state law claims. The defendants remaining in the case at this

juncture include LCC, Rodney Bahl ("Bahl"), the LCC police officer who led the murder investigation, and John Imeson ("Imeson"), the Chief of the LCC Police Department; Ingham County (the "County") and Ingham County Prosecutor Stuart J. Dunnings, III ("Dunnings"); and Eric E. Matwiejczyk, the assistant prosecutor in charge of Plaintiff's criminal case.

ANALYSIS AND RULINGS

I.      *Section 1983 and 1985 Claims*

    A.      **Absolute Immunity – Clarification**

In the December 10, 2008, Order, the Court said that Dunnings is entitled to absolute prosecutorial immunity on Plaintiff's federal civil rights claims against him insofar as they are premised upon Dunnings' participation in Plaintiff's criminal prosecution. This immunity extends only to the individual capacity claims. *See Skinner v. Govorchin*, 463 F.3d 518, 524-25 (6th Cir. 2006). Moreover, absolute immunity extends to a prosecutor's acts deemed intimately associated with the judicial process, but not to his performance of administrative duties unrelated to judicial proceedings. *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003). Therefore, absolute immunity does not apply to Plaintiff's supervisory liability claim against Dunnings to the extent that it is based upon Dunnings' administrative acts or failures to act unrelated to Plaintiff's criminal case. *See Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680 (2d Cir. 1984) (stating that "courts have recognized a cause of action under § 1983 where it was alleged that a supervisor's failure to train or to supervise personnel led to the deprivation of constitutional rights, or where it was alleged that a policy existed that led to the deprivation of constitutional rights"); *Baloun v. Williams*, No. 00 C 7584, 2002 WL 31426647, at *10 (N.D. Ill. Oct. 25, 2002) (concluding that claims based upon certain defendants' failure to train, supervise, control, and discipline concerned administrative functions that were not covered by absolute prosecutorial immunity); *Jones v. City*

2

*of Boston*, No. Civ. 03-12130-RGS, 2004 WL 1534206, at *3 (D. Mass. July 9, 2004) ("absolute immunity does not attach to a supervising prosecutor for acts performed in a purely administrative capacity unrelated to the prosecution").

Finally, because absolute immunity does not apply to official capacity claims (which are really against the municipality) or to municipal liability claims, the County may not claim absolute immunity as to the federal claims. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999) ("Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983.") (citation omitted); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1153 (2d Cir. 1995) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160 (1993), and stating that the plaintiff's "malicious prosecution claim against the County of Suffolk is not barred by prosecutorial immunity").

### B.    Supervisory Liability – Imeson and Dunnings

Dunnings and Imeson contend that Plaintiff's supervisory liability claims in Counts III and IV of the first amended complaint fail to state a claim.  "For a claimant to succeed on a claim of supervisory liability under § 1983, the claimant must show more than simply a supervisor's right to control employees, and cannot succeed solely on the theory of *respondeat superior*."  *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005).  Liability cannot be based upon a mere failure to act or the right to control employees or mere negligence.  *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998).  Rather, a supervisor must have "either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

3

1999) (quoting *Hays v. Jefferson County*, 688 F.2d 869, 874 (6th Cir. 1982)).  Thus, in order to survive a motion to dismiss for failure to state a claim, a plaintiff asserting supervisory liability must allege that a defendant condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *Lozano v. Corrections Corp. of Am.*, 23 F. App'x 348, 350 (6th Cir 2001).  *See also Whitfield v. City of Philadelphia*, No. 08-417, 2008 WL 4977375, at *6 (E.D. Pa. Nov. 19, 2008) ("To state a claim for supervisory liability . . . a plaintiff must not only identify a specific supervisory practice that the defendant failed to employ, he or she must also allege both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's claim of inaction could be found to have communicated a message of approval.") (internal quotations omitted); *Scheib v. Boderk*, No. 3:07-CV-446 (E.D. Tenn. Oct. 3, 2008) (plaintiff's failure to allege that Sheriff engaged in active unconstitutional behavior rendered dismissal proper under Rule 12(b)(6)).

Plaintiff fails to allege that either Dunnings or Imeson engaged in any active unconstitutional behavior that would subject them to liability.  In spite of a lengthy first amended complaint, there is no allegation showing that Dunnings or Imeson had knowledge of the alleged constitutional violations or that they had knowledge of prior similar incidents and failed to act under circumstances that could be interpreted as communicating their approval of the unlawful acts.  In short, Plaintiff's allegations, at best, establish *respondeat superior* liability or a failure to act.  This is insufficient to impose supervisory liability under § 1983.  *Shehee*, 199 F.3d at 300.  Accordingly, Plaintiff's supervisory liability claims against Dunnings and Imeson in their individual capacities will be dismissed.  As for Plaintiff's allegations of failure to train and discipline in Count III, such allegations concern municipal liability rather than individual capacity claims.  *Scheib*, 2008 WL 4510074, at *4 (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989), and *Bd. of Comm'rs of Brian County v. Brown*, 520 U.S. 397, 117 S. Ct. 1382 (1997)).

4

### C. Official Capacity Claims Against Dunnings and Imeson

The official capacity claims against Matwiejczyk, Dunnings, Imeson, and Bahl will be dismissed as stipulated in the December 10 hearing.[1]  (12/10/08 Hr'g Tr. at 29-30.)

### D. Conspiracy Claim – Count IX

Count IX alleges a conspiracy claim under both § 1983 and § 1985(3).  This claim is subject to dismissal because Plaintiff offers nothing more than conclusory allegations.  The Sixth Circuit has held that "vague and conclusory allegations, unsupported by material facts, are not sufficient to state a conspiracy claim under § 1983." *Becker v. Clinton*, 2000 WL 553911, at *1 (6th Cir. Apr. 28, 2000) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).  Essentially, Plaintiff alleges, without factual support, that Defendants entered into a plan or agreement to deprive him of his constitutional rights.  His claim lacks support even taking into account all the allegations in the first amended complaint, not merely those set forth in Count IX.  Therefore, dismissal is proper.

The § 1985(3) conspiracy claim is also subject to dismissal because it contains nothing more than conclusions that Defendants acted with animus toward Plaintiff.  To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege, among other things, a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws." *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct 3352, 3356 (1983)).  Thus, the defendants must act with class-based animus.

---

[1]Plaintiff's claim against Matwiejczyk in his official capacity is subject to dismissal on the basis that such a claim is against the State of Michigan, which is not a person under § 1983. *See Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th cir. 1993) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2311-12 (1989)). The same is true for any claim against Dunnings in his official capacity to the extent the claim is based upon Dunnings' participation in the criminal proceeding.  Even though Matwiejczyk and Dunnings are County employees, in conducting the criminal proceedings they were acting on behalf of the State of Michigan because they were acting as agents for the state in prosecuting state criminal charges. *Id.* at 657-58. *See also* M.C.L. § 49.153 ("The prosecuting attorneys shall, in their respective counties, appear for the state . . . and prosecute . . . in all the courts of the county, all prosecutions . . . in which the state . . . may be a party or interested.").

Moreover, courts have recognized that "[n]ot every class of persons somehow disadvantaged by the realities of everyday life can claim class-based protection under § 1985(3)." *McCleester v. Mackel*, No. 06-120J, 2008 WL 821531, at *30 (W.D. Pa. Mar. 27, 2008) (citing *Russo v. Voorhees Twp*, 403 F. Supp. 2d 352, 359-60 (D.N.J. 2005) (holding that the "impoverished" are not entitled to protection under 1985(3)). In short, Plaintiff's allegations are insufficient to show a conspiracy based upon his race, his allegation of animus based upon homeless is not a class protected by § 1985(3), and nothing else in the first amended complaint suggest a class-based conspiracy aimed at a class protected by § 1985(3).

### E.    Municipal Liability – County and LCC

A municipality may not be held liable under § 1983 based upon a theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978). Rather, municipal liability arises only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S. Ct. 2037-38. In addition, there must be an "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985).

In addition, "[t]he courts recognize a systematic failure to train police officers adequately as custom or policy which can lead to city liability." *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989)). The failure to train must amount to "deliberate indifference" on behalf of municipality toward the rights of its citizens. *Id.*

In order to state a claim against a municipality under § 1983, a plaintiff must allege that "1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the

moving force behind the violation." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996). In order to state a claim of municipal liability for failure to train, a plaintiff must set forth sufficient facts connecting his injury with a municipal policy, custom, or practice and that the failure to train amounted to a deliberate indifference to the plaintiff's rights. *See Moreno v. Metro. Gen. Hosp.*, No. 99-5205, 2000 WL 353537, at *2 (6th Cir. Mar. 28, 2000).

Plaintiff alleges that the County and/or Dunnings had various policies, practices or customs concerning responding to criminal discovery requests; not seeking out or gathering police reports, *Brady* and *Giglio* materials, and other information for production to criminal defense attorneys; not documenting or timely producing *Brady* material known to the police or prosecutors in oral form but not reduced to writing; and failing to train or supervise assistant prosecutors regarding their obligation to provide timely disclosure of exculpatory materials. (1st Am. Compl. ¶¶ 91-92, 170, 175, 181, 188, 203, 204, 220, 221, 237.) He makes similar allegations with regard to LCC having policies, procedures, or customs: (1) by which exculpatory information is not sought out, gathered, tracked or produced to criminal defendants or their counsel and such information, if not in written form or report form is also not gathered, tracked down, or produced to criminal defendants or their counsel (1st Am. Compl. ¶¶ 170, 205, 206); (2) of obtaining false confessions from suspects and/or witnesses, failing to investigate claims adequately, withholding evidence in an investigation, and to receive, track, and disclose exculpatory evidence to defendants and their counsel (1st Am. Compl. ¶ 246); and (3) of inadequate training that was so deficient as to constitute a deliberate indifference to citizens' rights (1st Am. Compl. ¶ 290).

While Plaintiff's municipal liability allegations are not overwhelming, and Plaintiff may face evidentiary obstacles if his claims are tested on a motion for summary judgment, *see Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007), the Court concludes that they are sufficient to state a claim. Although the Supreme Court has recently said that Fed. R.

7

Civ. P. 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Bell Atl. v. Twombly*, 127 S. Ct. 1955, 1965 (citation omitted), it has also reaffirmed that notice pleading is the rule: "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted). Thus, Plaintiff's municipal liability claims against the County and LCC may proceed.

Finally, the County has raised the issue of whether it can be held liable for the prosecutor's policymaking decisions because the County Board of Commissioners does not have supervisory authority over the day-to-day operation of the prosecutor's office. One judge in this district reached such a conclusion, albeit in a different factual context. *See Hughson v. County of Antrim*, 707 F. Supp. 304, 307-08 (W.D. Mich. 1988) (holding that the county could not be liable under *Monell* because it was the prosecutor, not the county through its board of commissioners, that was responsible for the plaintiff-investigator's termination from employment with the prosecutor's office). Because the County first raised the argument in its reply, however, the Court declines to address it without affording Plaintiff an opportunity to respond.

## II.    *State Law Claims*

### A.    **Matwiejczyk**

Matwiejczyk contends that he is entitled to immunity on the state law claims. The Court concludes that Matwiejczyk is not entitled to statutory immunity under M.C.L. § 691.1407(5). Based upon a straightforward reading of this subsection, it does not cover Matwiejczyk because he is an assistant prosecutor. Thus, he is not elected and cannot be considered the highest appointed executive official. Matwiejczyk is entitled to common law prosecutorial immunity, however. *See Payton v. Wayne County*, 137 Mich. App. 361, 371, 357 N.W.2d 700, 705 (1984) (citing *Davis v. Eddie*, 130 Mich. App. 284, 343 N.W.2d 11 (1983), and stating that "Michigan law . . . favors the

*Imbler* policy of protecting the prosecutor's independence of judgment from harassment due to the constant threat of potential litigation").  Michigan's rule of absolute prosecutorial immunity thus closely follows that enunciated by the United States Supreme Court in *Imbler*.  Contrary to Plaintiff's argument, the Michigan governmental tort liability act did not displace common law prosecutorial immunity.  In fact, at least one panel of the Michigan Court of Appeals has continued to recognize the existence of absolute prosecutorial immunity even after the enactment of the immunity statute.  *See Fifield v. City of Lansing*, No. 221755, 2001 WL 1134607, at *3 (Mich. Ct. App. Sept. 21, 2001) (per curiam) (concluding that the defendant assistant prosecutor was absolutely immune from his quasi-judicial actions and citing *Payton* and *Davis*).  Moreover, the court in *Bischoff v. Calhoun County Prosecutor*, 173 Mich. App. 802, 434 N.W.2d 249 (1988), recognized common law  prosecutorial immunity as a separate basis for immunity, but clarified that its decision in the case did "not rest on the common-law doctrine of prosecutorial immunity, but rather on the governmental immunity doctrine as codified in M.C.L. § 691.1407."  173 Mich. App. at 810, 434 N.W.2d at 252.

### B.    Imeson and Bahl

Lastly, Imeson and Bahl contend that they are entitled to common law qualified immunity. This argument relies upon Subsection (3) of the governmental tort liability act, which provides: "Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986."  The Michigan Court of Appeals has held that *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641 (1984), provides the law of intentional torts for this subsection.  *Frohriep v. Flanagan*, 278 Mich. App. 665, 675-77, 754 N.W.2d 912, 920-21 (2008).  *Ross* held that lower level officials and employees are immune only if they are:  (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial acts.  *Id.* at 633-34, 3763 N.W.2d

9

641.  Imeson and Bahl argue that the state law claims are subject to dismissal because Plaintiff failed to plead in avoidance of governmental immunity as required by Michigan law.  *See Mack v. City of Detroit*, 467 Mich. 186, 204, 649 N.W.2d 47, 57 (2002).

The Court concludes that Defendants are not entitled to dismissal because Plaintiff's allegations are sufficient to establish that Defendants were not acting in good faith, one of the three elements required under *Ross*.  Plaintiff alleges in paragraph 168 of the first amended complaint that Defendants acted in bad faith.  Other allegations in the first amended complaint support an inference that Defendants acted in bad faith, such as feeding details of the crime to Plaintiff in order to fabricate a confession.  "Bad faith" for purposes of *Ross* has been equated to "deliberate indifference" under § 1983, *see Flones v. Dalman*, 199 Mich. App. 396, 402, 502 N.W.2d 725, 728 (1993), and there are sufficient allegations to show that Defendants acted with deliberate indifference.  This portion of Defendants' motion will thus be denied.[2]

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** as follows:

1.    Defendant Eric Matwiejczyk's Motion To Dismiss And/Or For Summary Judgment (docket no. 103) is **GRANTED** with regard to Plaintiff's state law claims based upon common law prosecutorial immunity.  Defendant Matwiejczyk is therefore **dismissed** from the case.

---

[2]Defendants did not argue the immunity issue separately as between Imeson and Bahl, although the Court notes that the allegations may be insufficient to show that Imeson acted in bad faith.  However, the Court will not address the argument in light of Defendants' failure to raise it.  Likewise, Defendants did not argue that Imeson is immune under M.C.L. § 691.1407(5) as the highest appointive executive official in the LCC police department.  If Imeson is in fact the Chief of the department, he may be immune because Michigan courts have held that "[t]he police chief is generally recognized as the highest appointive official in the police department."  *O'Bryan v. Colwell*, No. 210926, 1999 WL 33433526, at *2 (Mich. Ct. App. Oct. 29, 1999) (citing *Payton v. City of Detroit*, 211 Mich. App. 375, 536 N.W.2d 233 (1995)).

2.      Defendants Ingham County And Stuart Dunnings, III's Renewed Motion For Dismissal (docket no. 104) is **GRANTED IN PART AND DENIED IN PART**. The motion is **granted** with regard to the supervisory liability claim against Defendant Dunnings in Count III.  In addition, the claims against Defendant Dunnings in his official capacity are **dismissed**.  Therefore, Defendant Dunnings is **dismissed** from the case.  The motion is **denied** with regard to Plaintiff's municipal liability claims against Ingham County.

3.      Defendants Lansing Community College, Rodney Bahl, and John Imeson's Motion To Dismiss Counts III-V and IX-XVII Pursuant To Fed. R. Civ. P. 12(b)(6) (docket no. 108) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **granted** with regard to the supervisory liability claims against Defendant Imeson in Counts III and IV and the conspiracy claims alleged in Count IX.  The official capacity claims against Defendants Imeson and Bahl are also dismissed.  The motion is **denied** with regard to the municipal liability claims against Lansing Community College and the state law claims against Defendants Imeson and Bahl.

In sum, the case will proceed on the claims against Defendant Bahl in Counts I and II; the municipal liability claims against Ingham County and Lansing Community College in Counts V and X; and the state law claims against Imeson and Bahl in Counts XII-XVII.

A Rule 16 scheduling conference will be set by separate Order.

Dated:  December 18, 2008                      _____/s/ Gordon J. Quist_____
                                          GORDON J. QUIST
                              UNITED STATES DISTRICT JUDGE